The next case for argument, case number 24-1726 from the Eastern District of Arkansas, Greg Hale et al. v. ARcare. Mr. Freitas? May it please the Court, Matthew Freitas along with Rosie Griffin on behalf of ARcare. I'd like to start by what's not disputed, and that is ARcare is a deemed public health service employee for purposes of a federal immunity, and that every act or alleged act or in every omission or alleged omission that is the basis of the claim against it arose out of the course and scope of its deemed employment. The only narrow legal dispute here is whether the immunity that it unquestionably has reaches the claims that were made against it. And that requires this Court to interpret the phrase related function in a very short statutory provision, section 233A of title 42. That provision was designed to be a full comprehensive immunity for the functions that the public health service employees and personnel would engage in, enacted in 1970. That exact... Now, wait a minute. You just made a statement that I understand is contrary to the legislative history. You just stated it as fact, the purpose of it. Maybe I wasn't... I must have missed something in what I heard. I would have... The purpose was to extend immunity to everything. No, no, Your Honor. I didn't mean... If I said that, I misspoke. You were building in your interpretation of related and so forth and function, and then stating as fact your view of that issue was the purpose. And I thought the legislative history pointed pretty clearly to a more limited purpose. I didn't mean to refer to legislative history just yet. Well, you talked about Congress' intent. Yes. I just said, okay, you just stated a congressional intent purpose that is inconsistent with what I haven't studied the legislative history to. I think I understand your point, Your Honor. And so what I was referring to was... I don't think Congress intended to give our care immunity for E&O coverages. I would disagree with that if the errors and omissions type of acts are the kinds of acts that the statute gets at. But I don't know that we need to grapple with that. Well, that's exactly what I see here. You want immunity from potential liability that you could easily purchase E&O insurance to cover. If I could get into the related function piece, I think that would address... No, I'd like... This is my fundamental approach to the case. Sure. You can answer it now. You can leave it alone, and I'll use it. No, I'll try to answer it, Your Honor. Oh, I'm sorry. I thought you were going to state the question. No, I said... So I think what it's... In my view of the case, you'd like immunity for things that can be covered under a typical E&O policy as opposed to a medical malpractice policy. I think using policy names like E&O or medical malpractice or premises liability all get us off track. I think what we ought to look at... Yes, except Congress used that. Not in the statute. Not in the immunity... Isn't it even in the title of a committee report? And I think titles can bear meaning on the statutory language, but the starting point has to be 233A. That is the provision that confers immunity, and it does not say the word malpractice. And there are numerous circuit courts... No, it simply uses an awful lot of inherently ambiguous terms. I don't think the word... Well, the key phrase here is related function or medical function, and the question is what those mean. And they are broad terms by design, and I think the breadth of those terms are the statutory signals, the evidence of congressional intent that Congress wanted the protection to be broad so that individuals going into this field wouldn't have anxiety about the types of lawsuits they could get sued under. And the type of lawsuit is captured by the word any, actions or proceedings. That's what... And I think maybe this is where I got off track with Your Honor and was suggesting legislative history. I was really trying to capture, and I was going to get there, the spirit of the Supreme Court case in Hui v. Castaneda, where there the Supreme Court, looking at Section 233A, says that it affords a broad protection and a comprehensive protection. And in that case, it's concerning the causes of action, the framing of the plaintiff. That's not what matters. What matters is the conduct. That's what dictates what's protected. And the conduct is described in the phrase performance of medical, surgical, dental, or related functions. This case... Counsel, let me ask you about that. In my way of looking at the case, what matters is the language of the statute. I don't care what the legislative history says. But don't we have to read resulting from together with damages? And so even if we think that protecting sensitive patient information is a related function to medical care, isn't the immunity only where the damage results from that function? And here, doesn't the damage result from a cyber attack rather than the performance of a function related to medical care? No, Your Honor. When the government has done a really good job of giving their credit for that, they're trying to get you to focus on the conduct of a criminal. But the claim against our care can only be about conduct of our care or the failure to act. And there, the allegation and the complaint repeatedly is that our care failed to protect that information such that it made it vulnerable to a criminal, someone sitting in the examination room, if you don't close the door, if you don't close the computer screen when people walk by, if you don't take the protective measures to make sure a patient's information is kept confidential, you expose it to others. And the Secretary of HHS, in the preambles to the privacy rule and the security rule of HIPAA, make it very clear that patients don't care how the information's compromised, if it's compromised. They don't care if it's a threat actor from outside, if it's an employee inside the health center, or if it's inadvertent, or if it's intentional, if it's negligent, or if it's not. They care whether their information is protected. So from the patient's standpoint, that doesn't matter. But I think to get directly at your question, Your Honor, the conduct here is the alleged failure to implement systems and practices to protect the confidentiality of information. And on that point, it's not a coincidence that the Secretary of the Department of Health and Human Services made our care a test under oath, subject to penalty of perjury, the document says. If you do not implement systems and procedures to protect the confidentiality of information against loss, unauthorized use, you will not get deemed, and you will not get immunity. So that's the Secretary, not the Attorney General's representative. The Secretary of the program charged with implementing this program. The employer, if you will, who decides what the duties and the functions are of the personnel that are being deployed across the country for the purposes of the Secretary's program. The Secretary has these entities attest they're going to do that. And it's even better. If you look at the last two pages or three pages of our reply brief, we give citations to this language. Not only does the Secretary of HHS say you have to attest that you're going to do the very things that plaintiff alleges you failed to do to get this deemed status immunity. I, pretending to be the Secretary here, I, Secretary, am drawing the connection between that function and one of the, and this is the words of the Secretary, highest clinical risk. So this is the Secretary of HHS implementing a provision of this statutory program, 233H1. That's where the Secretary is required to verify that the deemed entities have implemented policies and practices to guard against malpractice, and this is where the statute uses the word malpractice, way below the immunity provision, to guard against malpractice and the risk of lawsuits arising out of any health or health-related functions. That's Congress. When extending this program's immunity to deemed entities is saying, Secretary, make sure they do things that guard against malpractice and the risk of any health or health-related litigation. And in doing that, the application makes clear, the application the Secretary prescribes, makes clear that that is the provision the Secretary is implementing when calling for the deemed entity to verify, under penalty of perjury, that they will have systems and procedures to protect confidential information against loss and unlawful disclosure. I'm paraphrasing, but that's very close to what the actual document says. So, I think when trying to establish a connection, a relatedness, if you will. Related function is a key phrase here. When trying to establish the relatedness of a function, medical, or clinical, pretty closely similar word used in the deeming application, when drawing that connection, which I think, it's not skies the limit. It's not everything under the sun. I don't think we want to use E&O, premises liability, any other phrases. It's what function are you expecting them to perform? Well, one place an employer might say that is in the job application. That would be a function. Another place is, and this is why I'm really drawing attention to it, is in starting from the bottom up to the top. The employer is going to say what the employee is to do, and have the employee say in advance in a deeming application, which is like an insurance application. So, there is where you identify the conduct for which risks arise out of that you want coverage. Much like an insurance application. So, it is not a coincidence. It's something that both plaintiff and the government ignore in their papers. Why? Because it's inconvenient. If you were to take the words of the secretary, you would have to recognize that there is a direct connection. Not just related, a direct connection. Where if you don't recognize that connection, you do not get deemed. It doesn't even have to be that close. I would invite the court's attention to the Crandall decision. I'm sure you've seen it cited throughout our briefs. The government and plaintiff's position I think can be summed up as follow Ford v. Sandhills. Maybe you could fairly say our position is follow the careful analysis and methodical thinking of Judge Karras out of the Southern District. We think he did a wonderful job. I take it if we think Ford is more persuasive than Crandall. If you do, that's bad for our position. The big problem with Ford is that it does what, it achieves an outcome that numerous courts have said you can't do. It reduces the protection to medical malpractice immunity. That's it. Numerous courts, including Cucco out of the Second Circuit, which the Supreme Court resolved the conflict in favor of Cucco. That's a Supreme Court decision. Hui v. Castaneda resolving a conflict between Cucco and Hui out of the Ninth Circuit where the plaintiff in that case argued that the statute provides med malprotection only. Cucco says there's nothing in 233A, no language in 233A that allows you to draw that conclusion. The Supreme Court resolved that split in favor of Cucco at the urging of the Solicitor General. The Solicitor General's briefs, quite impressive. We had the benefit and the luxury and the privilege of representing the petitioners in that case, working alongside the Solicitor General. Their briefs were outstanding and what they said there was, this is not limited to medical malpractice. And they talked about the conduct as being so broad as potentially cover criminal conduct within the scope of your employment. Like an obstetrician wrongfully touching a patient during an examination. Perhaps I should know the answer to this, but I don't. A patient who sues for the wrongful disclosure of personal information, is that a, are they seeking a damage for personal injury? There is that in this case and others. Oftentimes they will add on to their claims other types of relief. To that point I would say the statute doesn't afford immunity based upon the relief a plaintiff seeks. So if a plaintiff seeks a breach of trust. Well it says for damages for personal injury including death resulting from. Correct. And I think one key, this is what I think another fundamental flaw of the Ford decision is. It conflates two distinct concepts. The Hui v. Castaneda case, United States v. Smith also make this point. When you're afforded, the Crandall decision makes this point as well. When you're afforded immunity, that's protection against any action or proceeding arising out of conduct. It doesn't matter whether the claim is viable. It doesn't matter what the theory of the claim is. It doesn't matter if it's taking damages, contract relief, injunctive relief. Those are issues for the merits and if a plaintiff were to seek injunctive relief under the exclusive remedy, they wouldn't get very far. If a plaintiff were to bring a class action under the FTCA, they wouldn't get very far. So you're given an exclusive remedy. So the language you're referring to, Your Honor, speaks to the scope and function of the remedy. But the remedy and the immunity are distinct concepts. So the damage doesn't have to arise from a personal injury. And if I can follow up, I think you're all but conceding that such a claim is not for personal injury. No, Your Honor. I think the claim here is for personal injury and seeks other relief. Personal injury includes emotional pain and suffering. That's right. That's classic injury. I thought there was another question. I also didn't notice if my time started at what I asked for or with the reservation. I just didn't notice that. I don't know if I have any time left to reserve at this point. If I could reserve maybe whatever would be permissible under those circumstances. We'll see. Thank you. Counsel? Good morning, Your Honors. May it please the Court. Counsel, my name is Chris Renz on behalf of the appellees. I will be speaking for eight minutes at a time. My colleague Mr. Kennedy on behalf of the amicus Department of Justice will take the latter seven minutes of my time if it pleases the Court. Your Honor, the appellee's claims in this case are about a data breach. You're going to have to speak up and put the mic down. Thank you, Your Honor. The appellee's claims in this case are about a data breach, an IT failure. And what the appellants nevertheless seek to do is to take a statute rooted in the performance of medical care and put it on that failure solely for the purpose of obtaining immunity. But this is contrary not only to the text but as Your Honor points out, recent case law, the only circuit court to determine a data breach case, Ford v. Sandhills, and there isn't a Supreme Court case on it. The appellant talks a lot in their brief and this morning about the Hui case. The Hui case is about once you have immunity, how broad is that immunity? It is not about whether you have the immunity. Whether you have the immunity is controlled by one sole statutory section, 233A, and in this case it doesn't apply for many reasons. First, under a very plain reading of the statute as the Ford v. Sandhill case went through in painstaking detail, this related function component of the statute has to be understood with medical, dental, or surgical functions. That's true both because of the word related and function as well as the fact that we look under common statutory interpretation canons. But even if the court determined this was ambiguous and it sounded like Judge Loken thought it might be, we go to the legislative history, which as you pointed out, Judge, is chock full of references to the fact that this is a medical malpractice alleviation effort by the United States government for that purpose and that purpose alone. I would also point the court to the surrounding statutory provisions and I think this is important. 233 has numerous other sections and they all talk about medical malpractice. G1, G2, H, M2, the reporting requirements are about medical malpractice liability. You don't have to under 233 report other incidents like prior cybersecurity incidents or data breaches. And then we talk about the Secretary. I heard a lot about the Secretary of Health and Human Services in Appellant's Counsel's remarks. And I would point, Your Honors, to page 18 of our brief where we quote the Department of Health and Human Services, which says the FTCA provides protection only for personal injury including death resulting from the performance of medical, surgical, dental, or related functions which constitute medical malpractice for purposes of this manual. Consequently, even with FTCA coverage, covered entities... Counsel, are you reading from the statute or a manual? Manual. Are you asking us to apply a manual or the statute? I'm asking you to apply a statute, but as long as opposing counsel is going to refer to the Health and Human Services Secretary's words, I think it's important that the court know that that same department has explicitly said that anything that's not medical malpractice, liability... Well, I'm going to apply the statute. I'm not going to read words into the statute that aren't there, including medical malpractice. Yes, Your Honor. Would you agree that physical injury can constitute more than medical malpractice? Physical injury. Do I think... I think physical injury is an injury within medical malpractice. I'm not trying to dodge your question. Isn't it broader than the term medical malpractice? Yes, there are personal injuries that are well outside of the statute. And that's what the statute says? That's what the beginning of the statute says, right. Would you agree that keeping medical charts for patients is part of the practice of medicine? I believe that keeping medical charts is part of the practice of medicine, yes, Your Honor. And so why wouldn't the safe storage of that data be a related function? Because, Your Honor, the related function component is about the performance of medical surgical dental. It is related to treatment. The same type of thing that happens with medical malpractice. And this is where I thought the Floor v. Sandhill Court did a good job focusing on what that was. Doesn't that case talk about the fact that it has to, that the damage has to result from the medical related function? In this case, isn't the damage from a data breach rather than a medical related function? That's correct, Your Honor. And I think that's one of the problems for the appellant. And to that point, I would point the court to page 11 of the appellant's appendix. It's the argument in the district court. And the appellant's counsel spends a lot of time talking about who this is that's in charge of data security and cyber security and distinguishes the fact that it is C-suite people. It is corporate or lay people. It is no longer medical assistants. I'm sure back in the day, the medical assistant would keep the files on the shelf. But we're obviously not in that time. This has now become an administrative or lay function. And it doesn't fit within the statutorily prescribed immunity that gets set forth in 233A. Your Honor, I'm going to, without any further questions, I'm going to cede the balance of my time to my partner. Mr. Kennedy? Good morning, Your Honors. Kevin Kennedy for the government. Congress passed the federally supported Health Centers Assistance Act to shield health centers from liability for personal injuries. Raise the thing. Speak up. Yes, sir. Yes, Your Honor. Raise the podium. It's all the way up. Sorry. As the only court of appeals to address the issue properly held, plaintiffs' data breach claims fall outside the scope of the statutory coverage. Plaintiffs do not claim that a doctor did anything wrong or that they received deficient medical care. Instead, plaintiffs' claims arise from an IT failure, a data breach to AR Care's data security system. AR Care's argument in favor of coverage contorts the text and has no discernible limit. Accepting that theory would mean that the United States would be exposed to an expansive and completely unforeseen set of liabilities for any sort of claim that just so happens to occur at a health center. Whether the claim results from a slip and fall or a theft on its premises, this Court should follow the Fourth Circuit and this Court below and hold that Section 233A does not encompass the data breach claims at issue here. Now, I think you I think you confirmed what I was going to ask you. The question here should be who pays. That's right. The question is who pays. And if it's the deemed entities because the immunity doesn't stretch this far, then they go out and get insurance just as they would get insurance without the benefit of this. That's absolutely right. Otherwise, guess who pays for the, frankly, silliness of this class action data breach stuff? That's absolutely right. AR Care might well have a duty to keep data confidential and, you know, whether it violated some law in failing to keep that data confidential, you know, that's besides the point in this case. The question here is whether by failing to do so, in failing to do so, they were performing a medical, surgical, dental, or related functions. What's the pay? Who pays? So in this case, it's litigation costs and it's for all the individual claimants who are victims, really. They're victims by the class action plaintiff's lawyer's view and, therefore, they're out something which they'll say, oh, it's really a lot of money. They're claimants against the health center unless the health center is on you. So unless it happens in all of these kinds of class action cottage industries, you settle. So the taxpayers now pay for the settlements. That's what we're really talking about, right? Isn't that why the Department of Justice has said, uh-oh, we better not agree to be substituted and sign up for this? Yes. The United States did not assume liability for these types of claims. Use the word unforeseen which prompted me to. Absolutely. No, that's 100 percent correct. The United States decided, you know, I think the legislative history is instructive on this point, though I understand the court is interpreting the statute. But I think the legislative history makes clear that Congress saw that health centers were using too much of their money, their federal grant dollars, on medical malpractice insurance. And they said, we'll pay for those claims out of pocket. We'll pay for those claims. We'll replace your medical malpractice insurance. We won't replace your other types of insurance. The legislative history says nothing about that. Now, the statute is equally clear as the legislative history on this point. You can start with the text of the provision, 233A. It lists three medical functions. Medical, surgical, and dental. And then it says related functions. So related functions is naturally, you know, I think most plainly read to have that same characteristic. It entails other health care functions that health centers provide. And if you look elsewhere in the statute, it confirms this reading. As my colleague said, 233H says that the health center has to reduce the risk of malpractice. It doesn't have to reduce the risk of other liability. Also, I think in Structures 233M and G, their deeming status satisfies medical malpractice insurance requirements. It doesn't satisfy other types of insurance requirements. And then if you look at 233G, too, if the health center nonetheless has medical malpractice insurance and a claim is brought against it, those benefits are subrogated to the United States. The statute does not provide for the subrogation of other types of benefits to the United States. So I think the statutory scheme, the statutory text and the provision itself, and the broader statutory scheme confirm what the legislative history says, which is that this statute is a replacement, you know, covers medical, surgical, dental, and other health care functions. And, you know, I would just say the four circuits holding on this on the data breach claims in that case and four to be sampled is really on all fours with this case. So, you know, I think it's extremely persuasive. It was a thoroughly written opinion. And to go the other way, this court would have to create a direct circuit split. If the court has no further questions, we'll rest on our briefs. Just one. Obviously, we need to give some import to the term related functions. So what would fall outside of medical, surgical, or dental that constitutes a related function that doesn't fit within one of the three before, under your interpretation? Absolutely. We offer in our brief physical therapy, for example. You know, it's performed by different personnel. People who go to, they don't go to medical school. They go to physical therapy school. It's done after the fact. It's arguably not a medical function. But I don't think it's, so that's a good example. I think pharmacist services would be another example. That's a health care function that would fall under related. And if you look at the activities that public health service employees were charged with performing at the time that 233A was enacted, there are statutes charging them with performing medical, surgical, dental, and hospitalization and optometric treatment in remote medical facilities. And so it's those sorts of other health care functions that related function serves to capture. One additional point I will say is that there might be a question mark about whether, you know, is physical therapy a medical function or a related function? It's a boundary line question. And I think my friend on the other side was right insofar as that they didn't want public health service employees not to know if they would be covered when they were providing health care functions. And so what the statute does is it says, you know, we're going to put to bed the question of whether physical therapy is a medical function or not. We're going to capture all related health care functions. And so the physical therapist who works for the public health service or who works for the health center knows they'll be covered when they're performing their medical, their health care functions. What it doesn't do, of course, is capture radically different things like, you know, cyber security. Thank you, your honors. We'll rest on our papers. Thank you. Can I see one minute and 39 seconds? Is that fair? A minute and a half. A minute and a half? Okay. I'd start by saying that the Ninth Circuit in Friedenburg v. Lane County rejected exactly the argument the government is making here where it said the damage in that case was from someone committing criminal acts. The patient went out and killed a bunch of folks in the community and maimed people in parking lots. And then those third party claimants brought claims against the health center. The government argued, yeah, but the damage was not caused by the health center. The damage was caused by the patient going out in the community. And the claims weren't even brought by patients. And there the Ninth Circuit made clear it doesn't matter where, what the claim sought. It doesn't matter who brought the claim. What matters is whether the claim resulted from covered conduct. And it's interesting, the government still avoids the language of 233A throughout its argument. Doesn't want to go in there at all except to the very end to say it's related function. The government has opposed coverage for nearly every reflated function case out there. Nearly every single one. And if this court were to follow forward, it would wipe away all those prior cases. If you look at the Crandall case, that case comes up with a followable Now wait a minute, how can you say we wipe away everything when the only circuit that's considered it has apparently done the same thing? The test, Your Honor, that if you give related function the meaning that the government is assigning to it here, which is other health care functions, not related functions, other health care functions, you're going to get rid of the reporting cases. The, the, the Pomeroy, the Keiser, the Teresa T, all those All, all district court cases? Yeah, the district court cases that, that the Crandall case also district court I don't have to, I don't have to run down and say all the district court cases if I just say I agree with Ford. This is true, Your Honor, if you do. But I, but the consequence of that is you're, you're reducing this immunity to medical malpractice. You go down to the third, the third circuit that gets the question. Those two guys have ruined the world. I recognize that, that there can be splits. But we would, we would. Well, creating, creating one is, is takes a little more pondering than not. Yes. Yeah, and I'd say in the Hui versus Castaneda case, it was went the other way at the district court. It went three to nothing at the appellate court, and then it went nine to nothing in the other direction, which, that's quite a swing, and it took a lot of work. But in that case, the Supreme Court said, no trouble seeing this as a broad and comprehensive protection. It'd be very weird to have the conduct narrow, but the scope of the immunity broad. Thank you. Very good. Thank you. Thank you. Thank you to all counsel. Excuse me. Case has been thoroughly briefed. Interesting, difficult question. We'll take it under advisement.